In Lana v. Barr, the petitioner was deported after the fundamental change in the law. Specifically, the Lana court noted that there was sufficient notice for Lana to present these issues and she failed to do so, or he failed to do so. Well, in that case, in that case, correctly, the Supreme Court decision came first. And that is correct, your honor. And then the and then the ninth, you can correct me, but I, I believe my recollection is that the Ninth Circuit case, the Supreme Court came first and the Ninth Circuit cases followed. That is correct, your honor. And that that makes a difference. But go ahead. Thank you, your honor. And that is correct, because the Supreme Court had decided Discamps and then the Ninth Circuit had decided Rendon. However, the issue in Lana was that they waited until the companion case decision in Lopez Valencia before seeking reconsideration. That's distinguishable from the case at hand here because Mr. Goulart was deported before there was any fundamental change in the law. And unlike Lana, he wouldn't have been put on notice of these changes until he learned of it through some other avenue, which Bonilla versus Lynch had indicated would look to actors such as continuing relationships with attorneys as well as access to information. Mr. Goulart's in a foreign country in Brazil and would not have access to these courts to learn whether or not these fundamental changes would have allowed him to renew his petition to stay in the United States. And for Mr. Also, what do you mean by wouldn't have access to courts? I mean, I assume that if he was here in the United States, he wouldn't be going to San Francisco or D.C., you know, to the actual court. I mean, he would get the decisions on the Internet. And I assume that decisions are on just as available on the Internet in Brazil. Is that not correct? They are, your honor, but they wouldn't have the same import. So they wouldn't be reported in Brazil as they would in the United States. And so he wouldn't have that same access to learn of this information as he would if he were in the United States. In fact, that's what sense that you mean, like in the press, what do you mean? That is correct, your honor. So in the press, he wouldn't have learned of it. In fact, that's how he learned of it. Here is his criminal court counsel had learned about the Supreme Court case and then reached out to let them know about the change in the law. And it was that point that spurred this transition for him to pursue a reconsideration because he had no idea of this change prior to that time. You know why, if he had a criminal court attorney, didn't learn about the NYSERDA case, I think, three years earlier. I don't know, your honor. I do know the record indicated that Mr. Goulart wasn't aware of even the immigration consequences. So I don't know if his counsel was up to speed on these cases to provide that notice. Well, he was he was I can't tell, but his counsel never perfected a direct appeal, I'll call it, from the IHA to the to the BIA. They dismissed ultimately because after being advised that he had been deported to Brazil, they dismissed essentially for failure to prosecute. That is correct, your honor, although Judge Foreman, I think, is talking about his immigration proceedings, correct, not the criminal proceedings, right? So what I'm getting at, I guess, is I believe there's a little inconsistency in your argument, I think, in the sense that you're saying, well, his criminal attorney, which presumably was here in the United States, you don't say why, but I guess your view would be, well, when the Supreme Court comes out with a decision, his criminal attorney here in the United States learns about it. Because I guess a higher profile than the United Circuit comes out with a decision. But he is in the United States. And the fact that his criminal attorney didn't tell him about the Ninth Circuit opinion, it seems to like undercut your idea that somehow there's a little bit of a tension in the in the Brazil versus being in the United States. And the fact his criminal attorney who was here in the United States didn't know, didn't know about the Ninth Circuit opinion either, or at least didn't tell him. Absolutely, Your Honor. And my understanding is, is that there may have been some hesitancy to move forward because of the question of whether or not the Supreme Court would issue a stay related to DeMaia versus Lynch. Because even in the Ho and Young versus INS case, at note two, they specifically state that the Supreme Court, any single justice or the Court of Appeal itself could issue a stay. And they concluded in that note that it would be quite possible that the appeal in that case would not have been resolved until long after there was a decision in the instant case. And in that same sense, it would have been difficult for Mr. Goulart to move forward, not knowing whether or not this stay could have been issued. OK, so make sure I understand what you're saying. It sounds like maybe you're saying that or you're saying that maybe it wasn't that Goulart and his counsel didn't know about the Ninth Circuit case. They just they weren't sure what to do with it. Not necessarily, Your Honor, what I'm trying to say is, is that they didn't know about it. As far as I have learned, his counsel never indicated that they learned about the Ninth Circuit case, only of the Supreme Court case. However, even if they did, there would have been it would have been reasonable for them not to pursue the case until there was more finality with the Supreme Court. Because there could have been a stay at any moment issued from any single justice while the case is being decided, and unlike Lana, while the application may be straightforward, Lana had the notice prior to departure. And it was that fundamental change that creates the equitable tolling here, because Lana had noted that the change in law is not always an excuse, especially when it's ignorance of the law. But that's when there is sufficient notice. And our argument here is that there is not sufficient notice. There was no notice for Mr. Goulart until he received that in June of 2018. Is that your argument? Because I was following you there, but if Lana says that ignorance of the law is no excuse and a change in the law is what gives you the notice, are you saying that the Ninth Circuit decision wasn't a change in the law just because it was subject to review by the Supreme Court? I guess I'm having trouble following that part of your argument. And I would argue that it is a fundamental change in the law, but that it would have been reasonable to wait until finality from the Supreme Court, considering the risk of a potential stay being issued. And unlike Lana, the ignorance of the law was not an excuse there only because there was not sufficient notice. And the sufficient notice there was that Lana was in the United States when Discamps and Rendon were decided, but Lana waited until the companion case in Lopez Valencia before pursuing reconsideration. Unlike Mr. Goulart, who didn't have that, he didn't wait for a companion case on the fact that I hear your factual distinction, but I'd have to go back and read Lana. Do you know if it relied on the fact that they're here in the United States? I mean, Lana's it seems to me there's a tension between Lana saying ignorance of the law is no excuse. Right. And, you know, they were ignorant, whether they're ignorant of it in Brazil or ignorant of it here in the United States. It seems like like they didn't really. How could they have relied on ignorance of the law as no excuse and also relied on the fact that while you're here in the United States, so it would have to be like ignorance of the law is no excuse when you're in the United States. But ignorance of the law is an excuse when you're somewhere else. And that's the question, Your Honor, is whether or not there was notice, because the distinction would be if you're in the United States and in proceedings, you would be under you would be under much more notice than you would if you're outside of the United States. Specifically, Lana even waived. But to make sure your argument says you acknowledge that Lana has sort of a constructive notice sort of just like we do with the law. Generally, Lana has. But you're saying the constructive notice aspect of Lana would only apply if you're in the United States. If you're outside United States, then you don't have. I wouldn't make a fine line distinction of that nature, Your Honor, it would be whether or not there's sufficient notice. And here being out of the country is a factor that needs to be considered in that whether or not notice is sufficient, because Lana was in proceedings and waived appeal and chose not to pursue these claims until the companion case came out. And in Lana, they took great pains to go over the Fifth Circuit case and Lugo Resendez. They didn't know. They didn't affirmatively choose not. They just didn't know until the third case.  So that's not really a distinction, is it? I would argue it is, Your Honor, in the sense that she was here in proceedings and would have known of those changes. And that's very different than being out of the country, because the notice would have been much more readily available. Which is a constructive notice issue. Like, I think I think at the end of the day, your argument kind of turns into a constructive notice, not actual notice, but constructive notice. But it only counts when you're in the States. I think that's what you're saying. But Mr. Schubert, let me just ask you, I want to make sure I understand the record accurately. I didn't see a declaration in the record from Mr. Goulart or from his former criminal defense attorney explaining sort of what happened after he was removed in the Supreme Court's decision. That is correct, Your Honor. We weren't able to get a statement from Mr. Goulart and timing was becoming an issue and he wasn't too stable in Brazil. And so communication was a problem as he was transitioning through various places. But the BIA, the BIA, as I understand it, notwithstanding the point that Judge Pai has made, the BIA appears to have accepted those facts. Am I correct? I'm looking at I'm looking at AR-3. Yes, Your Honor. But our argument would be that they didn't fully evaluate all of the factors because they didn't consider whether or not that notice would have been sufficient considering he was outside of the country. Well, the test is due diligence, not ignorance of the law. But go ahead. I know you're over your time and I'll give you a minute or two, but let's hear what the government has to say. Good morning, Your Honors, may it please the Court. Andrew Nzinga on behalf of the Attorney General. Per LONA, the board did not abuse its discretion in denying this untimely motion to reconsider. In 2015, this court issued what Petitioner now concedes is a fundamental change of law in its demise decision. The question is, how did he know that he was deported to Brazil? I think, you know, don't tell anybody on the Second Circuit, but I'm not sure that I read every Second Circuit opinion carefully that comes down. Somebody here, you have, you know, an alien who's deported to Brazil. Is it is he failed to exercise due diligence by going, let's say, on the Internet and looking every day to see whether or not the law has changed in his favor? Is that is that a failure to exercise due diligence? Well, of course, due diligence depends on the facts of the case, and this is a case where we really should focus on the actual facts and not sort of testimony of counsel. There was one fact alleged, one, to the agency, and that was in the AR-16. And all it was said is that in June of 2018, that that is when Defense Counsel told Petitioner. Right. And he found the only fact and he and and well, you claim that he didn't say he was in Brazil, but we could we could get away from that within 90 days after being told. He files for motion for, I guess, to reopen. For reconsideration. Right. And that's pretty that's pretty quick, considering, you know, he's in Brazil. I mean, as far as your argument that he was there's no proof that he was in Brazil. You advised the board that he had been deported. And and let me put it to you a different way. Suppose he was in the United States. Which is your you know, your implication is that there's no proof that he was still in Brazil. Would he would you have expected someone like that to follow daily the Ninth Circuit law to see whether there was a change in his favor? I mean, it's one thing when you know, when the Supreme Court decides a case. It gets coverage. Not when the when the Ninth Circuit does. It gets it gets coverage. I read about I read about Supreme Court cases all the time and they don't you know, sometimes I scratch my head and say, why did the Supreme Court even bother with this case? But it's different in this case. The Supreme Court, as soon as the Supreme Court decided it. His criminal lawyer. Said, oh, my God, this might help him. And he calls he calls this guy in Brazil or let's assume he's even in the United States. Is it you arguing that due diligence required this guy to read slip opinions of the Ninth Circuit, which check regularly the website of the Ninth Circuit to see what to see what the Ninth Circuit was deciding and whether they decided some case that was favorable to him? Is that what you're saying? Due diligence required. That is what Lona has held. I'm asking you to ask that is what Lona held. Don't tell me what Lona held. I want to know what you Lona was a case for one thing, where the where the Supreme Court case came first, as I know you didn't know. And I think, again, this is why facts matter. I'm reading for decision. Lona moved to withdraw her right to appeal to the BIA. The IJ granted her motion in April 2013. She was removed to Mexico. The first case that came out relevant was camp because campus issued in June of 2013, two months later. So Petitioner's entire attempt to distinguish is factually completely false. It's wrong. And this is why if we wanted to focus about where Petitioner is, we just don't know. We're not trying to imply the government's trying to imply that he is the United States. He could be in China. He could be in Brazil. It could be in France that we don't know. But if Petitioner wants to claim that his residing in Brazil is a factor, then he needs to present that to the agency. We can't on an appellate process if we start making up or asserting facts. If Petitioner believed that was relevant to due diligence, and that's fine, he can make that assertion. He needs to make that assertion first to the agency. Now, again, April, we can't simply bypass that because we are reviewing an agency decision. If we are simply deciding this in the first instance with statements made to the court now, either in open brief or in argument. Well, we could consider it. We could talk about it. But nothing was presented to the agency. What do you mean nothing? I mean, one fact, one fact is that in June of 2018, that's when he learned of the decision from his criminal attorney. But what does Lona say? Lona says that we have to look at clearly followed earlier precedent. And in that precedent there, it was just it was followed. It was June of 2013 to 2014 to 2015. And Lona says, well, I want to be sure about these dates. The Supreme Court decided the camp in 2013. Correct. June 20th, 2013. And as I see it, just looking at the citations, I mean, the two Ninth Circuit cases were in 2014 and 2015. So what I said, I believe was accurate that the Supreme Court case came first in this in our case. The Ninth Circuit cases came first and the Supreme Court case came later. And as soon as his criminal attorney learned about the Supreme Court case, he notified him. And from that date forward, there was like 90 days that passed till he filed this motion. I want you to put Lona aside and you tell me yes or no. Whether he was due diligence required him essentially to read Ninth Circuit cases, whether in paper form or go on the Internet, whether he's in Brazil or the United States, almost every day to determine whether the Ninth Circuit decided a case that might establish that he was wrongfully deported. Is that your argument? No, because we can't answer questions that were not presented to the agency. Is this your claim? I don't know because we are we're reviewing said he filed it as soon as he was told by his criminal attorney. And we have no evidence to suggest that the criminal attorney, who presumably is practicing the Ninth Circuit, wouldn't know about a binding decision like the Maya. And it was he who knows. You know, well, you know, we have exactly who knows. No, no. But we have any number of cases. In fact, it's disturbing in my work where where there are problems with the degree of competent representation. And it may be that his criminal lawyer wasn't exactly following Ninth Circuit case law to see whether there was anything that might be helpful to him. After all, he was his criminal attorney. And then the Supreme Court decides a case which gets garners almost always invariably a considerable degree of coverage, even if even if it's not on a major issue, you know, that they hold for the last minute in June. So that they the drama. And as soon as he finds out, he notifies what's lacking here. Do you believe that he was obligated to read Ninth Circuit opinions, whether in physically or on the Internet every day to find out whether or not the Ninth Circuit decided the case that might be helpful to him? Is that your position? Yes or no? No, your honor. No one has ever said that. Not your position. No. But what is one is obligated to do so. Therefore, his failure to do so is not is not a failure to exercise due diligence. His failure is here is to present any alleged facts of the agency to show due diligence. He has to present facts of the agency to show. And this is exactly what Lona says. Lona said beginning in 2013, the law changed. That was after the petitioner had been removed that case. But we had nothing. The agency was presented not with nothing in that case to show what action had been taken or what impediment prevented him from acting. And I think that's what the what your honors questions are going to. Likewise, here we have no evidence of what what what should he have said to the BIA that would have changed your position. Well, your honor, that, of course, would be the agency decide. I can, of course, answer what the district court judge might do in the line of proceeding. No, but you're claiming I mean, you're claiming defects. He didn't say X to the agency. Other than that, he was in Brazil and he didn't find out about it until his lawyer told him what he had been removed to Brazil. We don't know where he is. Well, I don't I'll be frank with you. I don't think it makes any difference because I don't think that if he were in the United States. Living a block from the courthouse in in Pasadena, which is unlikely given what the real estate is there, he would be he would be reading he would be reading slip opinions. He would be going to the library every day to look at the slip opinions or going on the Internet to check whether every day the Ninth Circuit decided a case that might be helpful to him. Well, correct. The government's not suggesting that is required. We have responding petitioners. No, no. But you're claiming you basically say he didn't stay still in Brazil when you notified the board that he had been deported. So let's assume he was anywhere else. I'm giving you the best case scenario, a block away from the courthouse in Pasadena. Should he have been sitting should have been going to the library in the courthouse every day to look at the slip opinions or go on the Internet to read, to see whether or not maybe there's a case that might be helpful for me? No, but he had to present alleged facts or presents evidence. Well, that's what I'm asking you. What alleged facts beyond what let's say he alleged? What do I don't know, no, no, but you're saying it's a defect that he didn't allege facts and that was the facts presented. That was what the court decided alone. Mr. And say, is there any final point you wanted to make? No, your honor, just simply focus on the age of what was actually presented to the agency and the actual facts of the case and the court should deny the petition. And counsel's answer to my question was correct. There is no declaration either from the petitioner or from his former criminal defense counsel in the record. Is that right? Correct, your honor. Okay. Thank you. Let's, did Judge Van Dyke, did you have a question? No, I'm good. Thank you. Okay. How about if we give Mr. Springmeier a minute of rebuttal? Judge Corman. I'm sorry. I didn't, I was just, I was just motioning to my law court. Thank you. And we would ask that the petition for review be granted because this case is distinguishable from Bonner, that there was notice in that case. And there was not notice here. That case in Discamps was argued in January of 2013. So the Supreme court had already initiated its undertaking prior to departure, unlike Mr. Goulart. And we would argue that he did not have that notice and that the fundamental change in the law should be sufficient here, considering he wasn't notified until June of 2008. Counselor, just so I don't want to take too much time, but just to make clear, is your position then what, I wasn't sure what, whether it was Corman's position, but, but was your, is your position that, that, that it's the Supreme court cases that get noticed and not the 9-3-8 cases? Is that your position? I think those would give much greater notice, your honor, because of the fact that they are much more publicized. And so it's easier for individuals to see those because of the coverage that they get. And because of the finality with them, because if a case is appealed, then there's a question of, will this case receive a stay or otherwise become inapplicable before any motions could be granted? So you say it would be a much greater, but do you, so, so it's nicer, I guess, I guess it kind of would, is your argument that it would kind of depend on the facts then of the case? Yes, your honor, of course, you know, each case requires a factual inquiry. And here, the fact that he didn't know until June and that we can't expect someone to follow all of the opinions from the appellate circuits, unless they have an attorney or someone who can do that for them. And Mr. Goulart did not have that opportunity. Your position is that I think a lot of discussion between the government and Judge Corman was, was the lack of, no fact, no fact. There's one fact, right? There's one fact, and that is that he didn't know. And your position is that's the only fact we need to know. That is our position. It should be sufficient, your honor, considering the lack of notice. All right. Thank you, Mr. Springwire. We appreciate both arguments this morning and we'll submit the case at this time. So thank you.
judges: Paez, Korman, Vandyke